## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

TISHAWANA REYNOLDS,  :
JEAN ELIZABETH JONES and  :
MARIE SAVAGE,  :
  :
  Plaintiffs,  :     CIVIL ACTION
  :
  v.  :
  :     NO. 12-2954
ARIA HEALTH,  :
  :
  Defendant.  :
_____ :

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                **MAY 31, 2013**

Presently before the Court is Defendant, Aria Health's ("Aria"), Partial Motion to

Dismiss Plaintiff's Second Amended Complaint against Plaintiff, Tishawana Reynolds

("Reynolds"), Reynolds' Response, and Aria's Reply. For the reasons stated below, the Motion

is granted in part and denied in part.

## I.    BACKGROUND

On August 10, 2012, Reynolds and two other Plaintiffs, Jean Elizabeth Jones ("Jones")

and Marie Savage ("Savage"), filed a five-count Amended Complaint[1] against Aria asserting

numerous causes of action related to their previous employment with Aria. On January 4, 2013,

we ordered this action severed because nothing in the Amended Complaint indicated that these

three Plaintiffs suffered their alleged injuries as a result of the same transaction or occurrence.

(Doc. No. 11.) We further ordered Reynolds to file an Amended Complaint which Reynolds

_____

[1]These Plaintiffs filed an initial Complaint on May 25, 2012.

filed on February 6, 2013 ("Second Amended Complaint").[2]  (Doc. Nos. 11-12.)   In Counts I and

II, Reynolds alleges unlawful discriminatory discharge due to race, color and ethnicity/national

origin and a racially hostile work environment claim pursuant to Title VII of the Civil Rights Act

of 1964 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA") 43 P.S. § 951 et seq.,

and 42 U.S.C. § 1981.  (Second Am. Compl. ¶¶ 41-48.)  In Count III, Reynolds alleges a

retaliatory discharge claim based upon these three statutes.  (Id. ¶¶ 49-52.)  In Count IV,

Reynolds asserts a discriminatory failure to hire claim pursuant to these same statutes.  (Id. ¶¶ 43-

46.)[3]  Lastly, in Count V, Reynolds asserts a promissory estoppel/detrimental reliance claim

against Aria.  (Id. ¶¶ 47-51.)  Aria filed the instant Motion on February 27, 2013.  (Doc. No. 13.)

Reynolds filed a Response to the Motion on March 31, 2013, and Aria filed a Reply on April 12,

2013.  (Doc. Nos. 14-15.)  Aria argues in its Motion that all of Reynolds' claims are "facially

deficient, fail to allege valid causes of action and should be dismissed with prejudice except for

Reynolds' discriminatory discharge claim pursuant to Title VII, the PHRA and Section 1981."

(Def.'s Mot. to Dismiss at 2.)

Reynolds states that she is a "black Jamaican national of African heritage" who moved to

the United States at age eleven, and was hired by Aria as a phlebotomist in May 2004.  (Second

Am. Compl. ¶¶ 18- 19.)  Reynolds asserts that she established an outstanding work record at

Aria, except for one incident in which she initiated a complaint to management that a white

employee had instigated an argument, and management automatically accepted the counter-

---

[2]Jones and Savage's actions were randomly assigned by the Clerk of Court to other judges' dockets.

[3]It is noted that the paragraphs in the Second Amended Complaint jump from paragraph 52 for Count III and then back to paragraph 43 for Count IV.

accusation of that employee.  (Id. ¶ 22.)  This incident was apparently expunged from Reynolds'

employment record and she was consistently evaluated on her performance reviews as "meets" or

"exceeds expectations."  (Id.)  Reynolds states that she took advantage of a tuition reimbursement

program at Aria and obtained a certificate as a respiratory therapist, and but for her termination,

would have had a clear path to getting such a position at Aria.  (Id. ¶ 23.)  In February 2008,

Reynolds asked Aria to take leave because she has a blind daughter with special needs who

required her attention.  (Id.)  Reynolds applied for leave through the Family Medical Leave Act

of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., which allows a maximum of twelve weeks leave,

and she was granted leave through May 12, 2008.  (Id.)

  As time for her return to work approached, Reynolds realized that she would need

additional time with her daughter, so in early April 2008, she spoke to her supervisor, Mary Ellen

Thrope ("Thrope"), who advised her that she could apply for a one-year leave made available

under Aria's policy.  (Id.)  Reynolds submitted the application, which was approved by Aria's

Human Resource ("HR") department and was also signed by Thrope on April 25, 2008, granting

approval for the one-year leave.  (Id. ¶ 29.)

  Reynolds asserts that in January 2009, she decided to return to work three months in

advance of the expiration of her one-year extended FMLA leave, but was informed by Jennifer

Abahazy ("Abahazy"), Director of HR, that she had been "taken off the books" in August 2008.

(Id. ¶ 30.)  Reynolds was advised by Abahazy that HR would get back to her, but they failed to

do so despite Reynolds' numerous phone calls to HR.  (Id.)  Reynolds concluded that she must

have been wrongfully fired in August 2008, and therefore, she instituted proceedings with the

Pennsylvania Human Relations Commission ("PHRC").  (Id.)

Reynolds asserts that she has been treated less favorably that comparably situated Caucasian employees who were given leave from Aria for family reasons, but were offered their jobs back upon their returns.  (Id. ¶ 34.)  Reynolds states that Aria violated its own policy by terminating her, and failed to articulate a legitimate nondiscriminatory reason as to why she was fired and not rehired.  (Id. ¶ 35.)  Reynolds further asserts that she was subjected to a hostile work environment in that white nurses made false accusations about her, and she complained to HR about such, but HR never responded to her complaints.  (Id. ¶ 37.)  Reynolds also maintains that her application for a position as a respiratory therapist was denied because of her race, and in retaliation for having engaged in the protected activity of filing a claim with the PHRC.  (Id. ¶ 38.)

On February 26, 2009, Reynolds filed a complaint of unlawful discrimination with the PHRC that was cross-filed with the EEOC.  (Id. ¶ 18.)  The PHRC dismissed the case on September 16, 2011, and the EEOC issued a notice of right to sue to Reynolds on February 28, 2012.  (Id.)

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550

U.S. 544, 555 (2007). Following Twombly, the Third Circuit has explained than the factual

allegations in the complaint may not be "so undeveloped that it does not provide a defendant the

type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224,

233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of

action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id.

(alteration in original) (quoting Twombly, 550 U.S. at 563 n.8). Furthermore, the complaint's

"factual allegations must be enough to raise a right to relief above the speculative level." Id. at

234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at

the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation

that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S.

at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed. The

Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *6 (E.D. Pa.

Apr. 8, 2009). The general rules of pleading still require only a short and plain statement of the

claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515

F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all

well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable

inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v.

Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine

whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.    DISCUSSION

Aria asserts that Reynolds' claims are fatally flawed because:

> 1.  Reynolds failed to meet the Title VII and PHRA prerequisites of exhausting administrative remedies before pursuing her racially hostile work environment claim, unlawful retaliation claim, failure to hire claim and ethnicity/national origin claim for unlawful discharge;
>
> 2.  failed to plead sufficient facts to establish a viable racially hostile work environment cause of action;
>
> 3.  failed to plead sufficient facts to establish a viable retaliation claim;
>
> 4.  failed to plead a valid cause of action for promissory estoppel;
>
> 5.  failed to plead a valid unlawfully discriminatory failure to hire claim; and
>
> 6.  failed to plead a valid "pattern and practice" theory of discrimination.

(Def.'s Mot. to Dismiss at 4.)  Aria further argues that if Counts II, III, and IV are not dismissed, Reynolds should be required to provide a more definite statement with respect to those claims so that it may adequately respond to these factual allegations.  (Id.)  We will address these arguments in turn.

### 1.  Exhaustion of Administrative Remedies

It is well-established that a Title VII plaintiff is required to exhaust all administrative remedies before bringing a claim for judicial relief.  42 U.S.C. § 2000e–5(e); Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996); DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 431 (E.D. Pa. 2007).  To do so, a plaintiff must "fil[e] a timely discrimination charge with the EEOC."  DeLa Cruz, 521 F. Supp. 2d at 431 (citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)).  The

purpose of this requirement is "(1) to ensure 'that an employer is made aware of the complaint lodged against him and is given the opportunity to take remedial action,' and (2) to give 'the EEOC the opportunity to fulfill its statutory duties of eliminating unlawful practices through the administrative process.'" O'Donnell v. Michael's Family Rest., Inc., No. 07–5386, 2008 WL 2655565, at *2 (E.D. Pa. July 1, 2008) (quoting Jackson v. J. Legis Crozer Library, No. 07–481, 2007 WL 2407102, at *5 (E.D. Pa. Aug. 22, 2007)).[4] In Title VII actions, failure to exhaust administrative remedies is an affirmative defense on which the defendant bears the burden of proof. Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

Aria asserts that Reynolds' Title VII and PHRA claims of unlawfully discriminatory discharge due to her ethnicity/national origin, racially hostile work environment, retaliation, and unlawful discriminatory failure to hire should be dismissed because Reynolds failed to assert such charges in any administrative charge with the EEOC and/or PHRC. (Def.'s Mot. Dismiss at 7.) Aria states that Reynolds' complaint of discrimination that was filed on February 26, 2009, with the PHRC and cross-filed with the EEOC only asserted that Aria unlawfully terminated her employment because of race. (Id. at 8-9; Ex. A.) Specifically, Aria argues that Reynolds' allegations in Counts I (Discriminatory Termination) and II (Racially Hostile Work Environment) relating to her employment with Aria are also procedurally flawed because in her PHRC complaint she fails to allege that she was unlawfully discharged due to her

---

[4]"Although the PHRA does not contain an analogous [exhaustion of administrative remedies] requirement, courts have held that the PHRA should be interpreted consistently with Title VII." McLaughlin v. Rose Tree Media Sch. Dist., 52 F. Supp. 2d 484, 491–92 (E.D. Pa. 1999). "To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination." Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. Cons. Stat. §§ 959(a), 962).

ethnicity/national origin, and does not include any allegation of a racially hostile work environment.  (See, Id.. Ex. A.)  Aria further maintains that Reynolds' Retaliation claim (Count III) and Discriminatory Failure to Hire claim  (Count IV) are based upon the factual allegation that in 2011, she applied for a position as a respiratory therapist but was rejected because of color, race, and ethnicity or national origin, and in retaliation for having engaged in the protected activity of filing a claim with the PHRC.  (Id. at 9- 10; Second Am. Compl. ¶¶ 38-39, 43-46.) Aria adds that Reynolds' Second Amended Complaint is devoid of any assertion that she ever put the EEOC or PHRC on notice regarding these allegations while her charge was pending before these agencies and/or so that they became part of the EEOC or PHRC investigation, or could reasonably be expected to grow out of her charge of discrimination during the investigations.  (Id. at 10.)  We first note that the administrative exhaustion requirement "is tempered by a fairly liberal construction given to EEOC charges."  Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 616 (E.D.Pa. 1999).  "The most important consideration in determining whether the plaintiff's judicial complaint is reasonably related to his EEOC charge is the factual statement." Flora v. Wyndcroft School, No. 12-6455, 2013 WL 664194, at *4 (E.D. Pa. Feb. 25, 2013) (quoting Doe v. Kohn Nast & Graf, P.C., 866 F .Supp. 190, 196 & n.2 (E.D. Pa. 1994).  Thus, if the allegations made in the complaint "could be 'reasonably expected to grow out of' those contained . . . in the EEOC charge, the pleading of the plaintiff will withstand a motion to dismiss, as the administrative remedies available to plaintiff will have been exhausted." Schouten, 58 F. Supp. 2d at 616 (quoting Page v. ECC Mgmt. Servs., No. 97–2654, 1997 WL 762789, at *3 (E.D. Pa. Dec.8, 1997)); see also Flora, 2013 WL 664194, at *4.  Stated differently, where a plaintiff attempts to assert a claim at the district court level which was not

raised in the administrative charge, the claim is considered exhausted if it is "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol, 82 F.3d at 1295 (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). A reasonable EEOC investigation should include claims not specifically mentioned in the EEOC charge "where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint." Pourkay v. City of Philadelphia, No. 06–5539, 2009 WL 1795814, at *5 (E.D. Pa. June 23, 2009) (citing Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir.1984)); see also Flora, 2013 WL 664194, at *4. "In such a case, the Court may reasonably expect an awareness on the part of the defendant that such allegations are likely." Schouten, 58 F. Supp. 2d at 616-17.

Reynolds responds that at the time she filed her charge with the PHRC on February 24, 2009, she was not represented by counsel, and raised two claims - one for discriminatory discharge based on her race, and the second for discriminatory discharge based on her association with a disabled person. (Pl.'s Resp. Mot. to Dismiss at 3.) Reynolds states that after filing her charge, she retained counsel who represented Jones and Savage, the co-plaintiffs with whom she initiated this action, and that counsel filed a consolidated charge on March 16, 2010, on behalf of Jones and Savage alleging claims of color, race, and ethnic discrimination. (Id.) This "Charge of Discrimination" filed on behalf of Jones and Savage does not mention Reynolds, but does state in relevant parts that:

> Claimants have been subjected to a pattern of and practice of discrimination by Respondent [Aria] based on ethnicity, race and color. Claimants intend to pursue their claims in a representative capacity as a class action under Fed. R. Civ. P. 23 brought on behalf of themselves and other similarly situated class members to

recover the damages incurred by them and other similarly situated
employees as a result of the pattern and practice of discrimination
inflicted upon them by the agents of Respondent. The class
consists of current and former African-American employees
employed by Aria, as well as African-American applicants for
employment.

(Id., Ex. A at 2.) Reynolds further asserts that her counsel in a letter, dated May 18, 2010,

brought her case against Aria to the attention of the PHRC investigator involved with the

consolidated charge of discrimination of Jones and Savage and informed the investigator that

they were interrelated with each other. The letter stated in part that "in the context of Ms.

Reynolds [sic] individual claim this evidence of discriminatory treatment of other African-

American employees is highly relevant to the issue of pretext in the cases of all three claimants

[Reynolds, Jones, and Savage]." (Id., Ex. B.) The letter further stated that Reynolds "request[s]

that the PCRC make a finding that ds [sic] unlawful discrimination based on her race, color and

ethnicity was the proximate cause which led to her termination." (Id.)

Reynolds argues that the March 16, 2010, "Consolidated Charge" of Jones and Savage,

and counsel's letter of May 18, 2010, to the PHRC constituted a request on behalf of her to

investigate her charges of discrimination based on race and ethnicity and, also constituted notice

to the EEOC and Aria that she intended to pursue these claims under the PHRA and Title VII.

(Id. at 3.) We agree and find that Reynolds' counsel put the PHRC, the EEOC, and Aria on

notice that her Charge of Discrimination included ethnicity as well as race. Thus, we will not

dismiss Count I of the Amended Complaint based on race or ethnicity because of failure to

exhaust administrative remedies.

Next, we address Aria's assertion that Count II (Racially Hostile Work Environment)

should be dismissed because Reynolds' complaint to the EEOC does not include any allegation of a racially hostile work environment. As stated above, if the allegations made in the complaint could be "reasonably expected to grow out of" those contained in the EEOC charge, the pleading will withstand a motion to dismiss. Schouten, 58 F. Supp. 2d at 616. We first find that, as with Count I, the Consolidated Charge of Jones and Savage and the letter from Reynolds' counsel put the PHRC and Aria on notice that Reynolds was pursuing a claim of a hostile work environment. Moreover, we are also of the opinion that Reynolds' complaint itself gave notice of this claim in that a hostile work environment claim could "reasonably be expected to grow out of" Reynolds' claim that she was terminated due to racial discrimination and the fact that she claimed she was terminated for taking extended time off under the FMLA. (Def.'s Mot. to Dismiss, Ex. A ¶ 8.) Accordingly we will not dismiss Count II (Racially Hostile Work Environment) on exhaustion grounds.

We next decline to dismiss Reynolds' Retaliation claim (Count III) for failure to exhaust administrative remedies. Because the United States Court of Appeals for the Third Circuit (the "Third Circuit") has declined to adopt a per se rule that all claims of retaliation are ancillary to the filing of a discrimination-based EEOC charge, a reviewing court must closely scrutinize the record to determine whether retaliation falls within the scope of the actual EEOC investigation. Pourkay, 2009 WL 1795814, at *6 (citing Robinson v. Dalton, 107 F.3d 1018, 1024 (3d Cir. 1996)). Where the facts underlying the properly alleged discrimination claims are closely connected to the facts underlying the retaliation claims, courts have deemed the retaliation claims fairly fall within the scope of an EEOC investigation, notwithstanding the failure to clearly enumerate the basis for such a claim. See, e.g., Jackson v. J. Lewis Crozer Library, No. 07–481,

2007 WL 2407102, at *4 (E.D. Pa. Aug. 22, 2007) (holding that while the complaint does not use the word "retaliation," the actions alleged by plaintiff were within the scope of a claim for retaliation and would have been within the scope of any investigation conducted by the PHRC as a result of the PHRC complaint); Demshick v. Del. Valley Convalescent Homes, Inc., No. 05–2251, 2007 WL 1244440, at * 12 (E.D. Pa. Apr.26, 2007) (allowing a retaliation claim to withstand summary judgment despite the plaintiff having checked only "disability" and not "retaliation" as the cause for discrimination on her EEOC charge form, because "a plain reading" of the plaintiff's narrative revealed a claim for retaliation as well).

Here, Reynolds avers in her Second Amended Complaint that Aria retaliated against her by "refusing to consider her application for a position as a respiratory therapist even though there were openings for this position at Aria and she was the most qualified candidate." (Second Am. Compl. ¶ 50.) We are of the opinion that the facts underlying Reynolds' alleged discrimination claim are closely connected to the facts underlying this retaliation claim and, thus, we will not dismiss it. Reynolds alleges in her PHRC complaint that a reason for her termination by Aria was that she took extended FMLA leave. (Def.'s Mot. to Dismiss, Ex. A.) We find that the question of whether the taking of the FMLA leave was a cause for any later retaliation against Reynolds when she later applied for another job with Aria "falls within the scope" of an EEOC investigation. See Pourkay, 2009 WL 1795814, at *6.

Furthermore, for this same reason, we will not dismiss Count IV (Discriminatory Failure to Hire) for failure to exhaust administrative remedies. The Third Circuit has consistently held that a plaintiff need not file a separate administrative complaint for "new acts that occur during the pendency of the case which are fairly within the scope of an EEOC complaint or the

investigation growing out of that complaint."  See Waiters, 729 F.2d at 237; see also Robinson, 107 F.3d at 1024; Antol, 82 F.3d at 1291.  Because we opine this claim should have fallen within the scope of the EEOC investigation in this matter, we find it has been exhausted.

**2.  Racially Hostile Work Environment**

Aria asserts that Reynolds' claim that she was subjected to a racially hostile work environment during the course of her employment in violation of Title VII, the PHRA, and Section 1981[5] should be dismissed with prejudice because she has failed to plead sufficient facts to support this claim.  We disagree.

In Andrews v. City of Philadelphia, the Third Circuit established the standard of liability for a hostile work environment claim, and adopted what has become known as a "totality of the circumstances" approach.  895 F.2d 1469 (3d Cir. 1990).  To bring an actionable claim, a plaintiff must establish "by the totality of the circumstances, the existence of a hostile or abusive working environment."  Id. at 1482.  This approach has been endorsed by the United States Supreme Court:

> We can say that whether an environment is 'hostile' or 'abusive' can be determined only by looking at the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 (1993).  Andrews set forth five elements necessary to establish a successful hostile work environment claim: (1) the plaintiff suffered intentional discrimination because of his or her membership in the protected class; (2) the

---

[5]The elements to prove a racially hostile work environment are the same under Title VII, the PHRA, and Section 1981.  See West v. Phila. Elec. Co., 45 F.3d 744 (3d Cir. 1995).

discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability. 895 F.2d at 1482.

Aria argues that Reynolds' Second Amended Complaint fails to allege a viable cause of action for a racially hostile work environment. (Def.'s Mot. to Dismiss at 12.) Aria states that Reynolds' claim is based entirely on the assertion that "several white nurses falsely accused her of pulling files from the ER merely because she was in the room, when she had a perfect right to be there." (Id. at 13; Second Am. Compl. ¶ 29.) Aria agues that, on its face, the Second Amended Complaint makes no assertion that puts this allegation beyond being a merely isolated incident, and there is no factual assertion demonstrating that this conduct was "racially motivated rather than being a mistake, bad working relationship or a personality conflict." (Id. at 13.) Additionally, Aria also claims that there is no allegation that the conduct was so severe or pervasive that it interfered with her ability to perform her job. (Id.) We, however, disagree that this claim should be dismissed at this stage of the proceedings, and find that Reynolds has sufficiently plead a cause of action for a racially hostile work environment in order to withstand a Motion to Dismiss.

As stated earlier, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 555). However, "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. Here, we are of the opinion that Reynolds' factual

allegations are sufficient enough to meet this standard. Reynolds has alleged that she has suffered intentional discrimination because of her race which has detrimentally affected her, which would detrimentally affect a reasonable person of her same protected class, and the existence of respondeat superior liability. See Andrews, 895 F.2d at 1482. Reynolds avers that she was subjected to a hostile work environment and gave an example that "white nurses falsely accused Ms. Reynolds of 'pulling files' from the ER merely because she was in the ER room, when she had a perfect right to be there." (Second Am. Compl. ¶ 29.) She further alleges that she complained to HR that she was being harassed for engaging in activities that would never have been questioned had she been a Caucasian employee, and that HR never responded to her complaints.[6] (Id. ¶ 36.) Reynolds also avers that a number of Caucasian employees engaged in egregious conduct which did not result in termination, but less serious conduct on the part of African-American employees resulted in termination.[7] She further contends that she has incurred "substantial emotional distress damages as a result of her exposure to a hostile work environment." (Second Am. Compl. ¶ 48.)

_____

[6]She specifically asserts that:

> [t]he racial harassment was inflicted directly by management, who were knowledgeable about their own misconduct. To the extent harassment was inflicted by others, Reynolds complained to management (e.g. when she was denied access to office facilities and information in the same terms and conditions as Caucasian employees she complained to the HR department that the denial was related to her race), but management did not respond to her complaint.

(Second Am. Compl. ¶ 36.)

[7]For example, Reynolds asserts that, among other instances, a White employee was not fired despite engaging in a shoving match with an African-American co-worker. (Am. Compl. ¶ 35.) Another White employee was smoking at the same time and place as Savage, but was not terminated as she was. (Id.) Another was fired for acts of sexual harassment, but was rehired. (Id.)

The only element of the <u>Andrews</u> test that is in question at this time is whether Reynolds has sufficiently plead that the alleged discrimination was "pervasive and regular." 895 F.2d at 1482. However, although Reynolds sets forth only one alleged incident in her Second Amended Complaint of a hostile work environment that involved her, she has also asserted a number of instances of discrimination involving other Aria employees which support her allegation that the discrimination was pervasive and regular. As noted earlier, Reynolds originally filed this action with two other Plaintiffs who were also employees of Aria. All three allege conduct of a hostile work environment while working at Aria, and all three were discharged. While the court actions have been severed, it is certainly possible that Jones and Savage could testify at Reynolds' trial and support Reynolds' cause of action of a hostile work environment. Thus, we find that Reynolds has alleged "enough facts to raise a reasonable expectation that discovery will reveal evidence of this necessary element." <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>, 550 U.S. at 556). If discovery does not yield such, Aria certainly has the option of seeking dismissal of this cause of action in a motion for summary judgment. Accordingly, this claim will not be dismissed at this stage of the proceedings.

### 3. Retaliation

Aria next contends that the Second Amended Complaint is "facially devoid of factual allegations to sufficiently plead a retaliation cause of action." (Def.'s Mot. to Dismiss at 13.) To establish a prima facie case of retaliation under Title VII, Reynolds must show that (1) she engaged in protected activity; (2) Aria took a "materially adverse" action against her; and (3) there was a causal connection between Reynolds' protected activity and Aria's action. <u>See Moore v. City of Phila.</u>, 461 F.3d 331, 341-42 (3d Cir. 2006); <u>see also</u> <u>Kachmar v. SunGard Data</u>

16

Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).

Regarding the first element of the prima facie case, Reynolds has sufficiently plead that she engaged in a protected activity by applying for a position that she was rejected from in retaliation for her filing a discrimination complaint.  Reynolds also meets the second element since Aria allegedly took a "materially adverse" action against her by refusing to consider her application for a position as a respiratory therapist.  Aria, however, asserts that Reynolds does not satisfactorily plead the causation element of her prima facie case because the timing in this case is too attenuated to satisfy this element.  Aria argues that Reynolds filed her PHRC claim on February 26, 2009, and that at least two years had passed between the filing of that complaint and Aria's decision not to hire her as a respiratory therapist.  (Def.'s Mot. to Dismiss at 15-16.)

With respect to the causation prong of a retaliatory claim, the standard in the Third Circuit is whether a reasonable jury could link the employer's conduct to retaliatory animus.  See Jensen v. Potter, 435 F.3d at 449 n.2 (3d Cir. 2006) (explaining that "[t]he ultimate question in any retaliation case is an intent to retaliate vel non").  In assessing this, courts generally focus on two factors: (1) the "temporal proximity" between the plaintiff's protected activity and the employer's allegedly retaliatory response, and (2) "the existence of a pattern of antagonism in the intervening period."  Id. at 450.  However, "each case must be considered with a careful eye to the specific facts and circumstances encountered."  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000); see also Burlington, 548 U.S. at 69.

Temporal proximity alone may be sufficient to establish the causal connection required for the prima facie case, or may be considered along with other factors in establishing the requisite causal connection.  Shellenberger v. Summit Bancorp Inc., 318 F.3d 183, 189 (3d Cir.

2003). "[W]hen only a short period of time separates an aggrieved employee's protected conduct and an adverse employment decision, such temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn." Fasold v. Justice, 409 F.3d 178, 190 (3d Cir. 2005) (holding that three-month period between protected activity and adverse action raises inference of retaliation); see Washco v. Fed. Express Corp., 402 F. Supp. 2d 547, 559-60 (E.D. Pa. 2005) (dismissing plaintiff's retaliation claim where five months passed between the protected activity and adverse action); Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 415 (E.D. Pa. 2000) (no causation where six months passed between speech and adverse action). Thus, while temporal proximity alone does not establish causation, nor does the lack of it constitute a finding of no causation.

Here, we consider it significant that the alleged retaliation of not hiring Reynolds occurred approximately two years after the filing of her PHRC complaint. However, like Reynolds' claim of a hostile work environment, we will not dismiss this claim at this time, but rather, will allow Reynolds to attempt to develop the record concerning this issue in discovery. After the discovery period, Aria, of course, has the option of filing a motion for summary judgment on this issue. Accordingly, we will also not dismiss this claim at this stage of the proceedings.

### 4. Failure to Hire

Next, Aria argues that Reynolds' failure to hire claim should be dismissed because she has failed to plead a prima facie case that it unlawfully discriminated against her by failing to hire her as a respiratory therapist in 2011. To state a prima facie case of discrimination, Reynolds must show that: (1) she is a member of a protected class; (2) she was qualified for the

employment position: (3) she was not hired for that position; and (4) the adverse employment action occurred "under circumstances that give rise to an inference of unlawful discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Waldron v. SL Industries, Inc. 56 F.3d 491, 494 (3d Cir. 1995).

Aria asserts that Reynolds has failed to include any factual allegations in her Second Amended Complaint that would permit an inference of unlawful discrimination. Specifically, Aria argues that Reynolds merely makes conclusory allegations that she was denied consideration for the respiratory therapist position because of her "disfavored class" and because of her "color, race, and ethnicity or national origin," and that these statements are insufficient to establish a prima facie case of discrimination. (Second Am. Compl. ¶¶ 38-39, 44.) Reynolds responds that her Complaint factually sets forth how she was induced into taking an extended leave of absence based on the promise that she could resume her former job upon her return, only to discover that her job had been eliminated prior to the expiration of the extended leave. (Id. ¶¶ 25-33.) Reynolds states further that, at the same time, she observed how Caucasion employees were freely granted leaves of absences for extended durations without having to make formal applications for them, and were able to retain their jobs upon their return. (Id. ¶¶ 34-35.) Reynolds maintains that evidence showing that she had "previously been discriminated against in the course of her prior employment with Aria is sufficient to create an issue of pretext in regard to whatever legitimate non-discretionary reason Aria may seek to advance as a justification for refusing to hire her." (Pl.'s Resp. Mot. to Dismiss at 20.)

While we agree with Aria that Reynolds' Second Amended Complaint does lack specific factual allegations regarding her claim of discrimination in Arias' failure to hire Reynolds in

2011 as a respiratory therapist, we find that it has been sufficiently plead to withstand a motion to dismiss. Reynolds asserts that the "inference of discrimination arises because it is highly likely that the same individuals who treated her in such an egregiously discriminatory manner in the past when she worked at the hospital, would have been likely to treat her application for employment in the same manner." (Id.) As Reynolds acknowledges, her Complaint fails to set forth specifically who these individual are or how they treated her application. We, however, reluctantly find that Reynolds has alleged "enough facts to raise a reasonable expectation that discovery will reveal evidence of this necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). At present, it is borderline, at best, that Reynolds has alleged sufficient facts to establish the fourth element of a prima facie case - that the failure to hire her occurred "under circumstances that give rise to an inference of unlawful discrimination." Texas Dept. of Community Affairs, 450 U.S. at 253. If discovery does not yield more evidence, as we noted earlier with regard to Reynolds' other claims, Aria has the option of seeking dismissal of this cause of action in a motion for summary judgment. Accordingly, we will not dismiss this claim at this stage of the proceedings.

### 5. Promissory Estoppel

Aria next argues that Reynolds' promissory estoppel claim should be dismissed because she has failed to plead sufficient facts to overcome the presumption under Pennsylvania law that she was an at-will employee. See Luteran v. Loral Fairchild Corp., 688 A.2d 211, 214 (Pa. Super. 1997). The doctrine of promissory estoppel permits a claimant to enforce a promise in the absence of consideration. Shoemaker v. Commonwealth Bank, 700 A.2d 1003 (Pa. Super. 1997). To maintain a promissory estoppel action, a plaintiff must aver the following elements:

"(1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." Id. at 1006; see also Crouse v. Cyclops Industries, 745 A.2d 606, 611 (Pa. 2000).

Under Pennsylvania law, there is a presumption that all employment is at-will, and, therefore, an employee may be discharged for any reason or no reason. Id.; see also Scott v. Extracorporeal, Inc., 545 A.2d 334 (1988). As a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. Id. "Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 918 (Pa. 1989); Krajsa v. Keypunch, Inc., 622 A.2d 355, 358 (Pa. Super. 1993). The sources of public policy include legislation, administrative rules, regulation, and judicial decision. Id. at 358-59.

Here, Aria agues that because a theory of promissory estoppel is not legally cognizable for an "at-will" employee, and Reynolds points to no clear public policy that was threatened by her discharge, this claim should be dismissed. Reynolds responds that "Aria's motion to dismiss fundamentally misconstrues the nature and the basis for the promissory estoppel." (Pl.'s Resp. Mot. to Dismiss at 22.) Reynolds states that she does not contest Arias' right to terminate her at will, but contests Aria's right to make a promise it knew she would rely upon. Reynolds asserts that Aria made an unconditional promise to extend her unpaid leave of absence by one year, and that she relied upon this promise to her detriment because she did not return to work prior to the expiration of the leave that was initially granted to her. (Id.) She adds that when she did give

notice of her intention to return to work three months in advance of the expiration of her extended leave, she was advised that she no longer had a job. (Id.; Second Am. Compl. ¶¶ 49-50.)

However, in Paul v. Lankenau Hospital, the Pennsylvania Supreme Court rejected the theory that detrimental reliance in general could be an exception to the employment at-will doctrine that there is no common law cause of action for termination of an at-will employment relationship. 569 A.2d 346, 348 (1990). Reynolds does not argue, nor is there any indication in the facts of her Second Amended Complaint, that, at some point, she was no longer an at-will employee of Aria in order to be able to bring a valid cause of action for promissory estoppel against Aria under Pennsylvania law.[8] Accordingly, because a theory of promissory estoppel is not legally cognizable in Pennsylvania for an at-will employee, this claim is dismissed.

### 6. Pattern and Practice

Aria also asserts in its Motion to Dismiss, although Reynolds does not list it as a Count in her causes of action in her Second Amended Complaint, that Reynolds attempts to bring an individual "pattern or practice" claim in the body of the Second Amended Complaint. (See Second Am. Compl. ¶¶ 35H-G, 36.) Aria argues that Reynolds is barred from bringing such a claim because this theory of discrimination is not available to individual, non-class plaintiffs. See Supinski v. United Parcel Serv., Inc., No. 06-0793, 2010 WL 569842 (M.D. Pa. Feb. 11, 2010). In her Response, Reynolds concedes that a "'pattern and practice' claim may only be pursued as a class action." (Pl.'s Resp. Mot. to Dismiss at 23.) Reynolds adds that "though this is not brought as a pattern

---

[8]Additionally, Reynolds does not point to any public policy that was threatened by her discharge that would allow her to bring a common law cause of action as an at-will employee. See Clay, 559 A.2d at 918.

and practice case, nothing bars plaintiffs [Reynolds, Jones, and Savage] from proving a 'pattern and practice' of discrimination as evidence to support their claims of individual discrimination." (Id.)

Thus, it is apparent that Reynolds has not brought a claim for pattern and practice, and we need not rule whether such a claim should be dismissed from this action. We also need not rule, at this time, on Reynolds' assertion that she is not barred from proving pattern and practice as evidence to support her other claims. This issue, if Aria chooses to raise it, would properly be raised before this Court in a Motion in Limine prior to trial. Moreover, Aria asks this Court to strike paragraphs in the Second Amended Complaint that rely on a pattern or practice of discrimination. (Def.'s Mot. to Dismiss at 20.) However, in light of our rulings above concerning this issue, we decline to do so.

### 7. Re-Pleading of Claims and Motion to Strike

Aria also maintains that to the extent that Reynolds' hostile work environment, retaliation, and failure to hire claims are not dismissed, Reynolds should be ordered to re-plead her allegations related to these causes of action with sufficient specificity that permit it to appropriately respond.[9] However, in light of our rulings that Reynolds has sufficiently plead these causes of actions to withstand the instant Motion to Dismiss, we decline to order Reynolds to re-plead these claims. Moreover, Aria has the opportunity in discovery to procure the information concerning these claims that it believes it is currently lacking.

Lastly, Aria asks this Court to strike paragraphs 1-5, 9(b)-(e), 10, 20, 35(f), (g), (h), 36

---

[9]Federal Rule of Civil Procedure 12(e) provides in relevant part that: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

and 37 of Reynolds' Second Amended Complaint because each paragraph alleges immaterial matters.[10]  Aria argues that "several of Plaintiff's averments in the Second Amended Complaint are entirely irrelevant and their inclusion not only prejudices Defendant but also runs the risk of confusing the issues."  (Def.'s Mot. to Dismiss at 22.)  We disagree and decline Aria's request to strike.  We do not find that these paragraphs in the Second Amended Complaint prejudice Aria in any way, and again, in light of our discussions in this Memorandum Opinion, we do not believe that the issues before the Court are confused.  We also opine that any confusion of the issues by Aria should be able to be cleared up through discovery.  If they are not, Aria can file the appropriate motion seeking further discovery.

## IV.    CONCLUSION

In accordance with the above, we deny Aria's Motion to Dismiss for failure to exhaust administrative remedies.  We also deny the Motion to Dismiss as to Count II (Racially Hostile Work Environment), Count III (Retaliation), and Count IV (Discriminatory failure to Hire).  We grant the Motion as to Count V (Promissory Estoppel/Detrimental Reliance).

In addition, we decline to strike paragraphs in the Second Amended Complaint relating to a pattern or practice of discrimination, and also paragraphs 1-5, 9(b)-(e), 10, 20, 35(f), (g), (h), 36.  Moreover, Arias' request that Reynolds re-plead her causes of action for hostile work environment, retaliation, and failure to hire is denied.

An appropriate Order follows.

---

[10]Federal Rule of Civil Procedure 12(f) provides in part that: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).